UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ERNEST DAVIS,

    Plaintiff,

    v.

PAUL TALBOT, et al.,

    Defendants.

CAUSE NO. 3:22-CV-328-JD-MGG

OPINION AND ORDER

Ernest Davis, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Davis is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Davis is an inmate at Miami Correctional Facility ("MCF"). He alleges that beginning in 2018, when he was housed at Pendleton Correctional Facility, he experienced pain and swelling in his legs. Dr. Paul Talbot, a prison physician,

diagnosed him with gout, and prescribed him with two different medications, neither of which provided any relief. He claims the swelling became worse and spread up his legs into his groin, and that he also experienced blistering on his leg, but Dr. Talbot allegedly did nothing to alter his treatment decisions.

In March 2019, he was transferred to MCF and was placed in the infirmary. He was treated by Dr. Noe Marandet, but he claims the doctor did nothing to address his pain and swelling and instead just gave him a walker to use. After he was in the infirmary for a few days, he was released to general population. He continued to complain to Dr. Marandet about his pain in the ensuing months. In December 2019, Dr. Marandet had him placed in the infirmary to monitor him for potential diabetes, which did not show that he had the disease. In 2020, he was finally sent to an outside vascular doctor, who it appears diagnosed him with blood clots. He had to have both of his legs amputated in March 2020.

In October 2020, he was sent to an outside hospital for evaluation of other symptoms he was experiencing and was diagnosed with acute kidney failure, scarring of the liver, and bladder problems. The doctor told him this "was the result of shooting insulin, and that he was not to shoot insulin under any circumstances because he was not diabetic." He claims he has ongoing medical problems as a result of these conditions, and, among other things, has to have his "stomach tapped" regularly.

Based on these events, he sues Dr. Talbot, Dr. Marandet, and Dr. Carl Kuenzli, another doctor at MCF, for failing to properly diagnose and treat him; MCF Director of

Nursing Lee Ivers and Regional Medical Director Dr. Michael Mitcheff,[1] who he claims were aware of his leg problems and did nothing to help him; and Wexford Health Sources, Inc. ("Wexford"), the corporation which employed these individuals. He seeks monetary damages and other relief.

Under the Eighth Amendment, inmates are entitled to adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). However, they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care.") (citation and internal quotation marks omitted). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). "[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation

---

[1] He lists this defendant's last name as "Mitchell," but it can be discerned from context that he is referring to former Regional Medical Director Michael Mitcheff. *See, e.g., Richardson v. Marthakis*, No. 3:20-CV-240-DRL-MGG, 2021 WL 4502337, at *1 (N.D. Ind. Oct. 1, 2021).

marks omitted). Additionally, persisting with a course of treatment known to be ineffective can constitute deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Giving Mr. Davis the inferences to which he is entitled at this stage, he has alleged a plausible Eighth Amendment claim against Dr. Talbot and Dr. Marandet for misdiagnosing him and ignoring his complaints of pain for years, ultimately resulting in the amputation of both his legs.[2] It is unclear at this stage what role Mr. Davis's own actions in "shooting insulin" may have played in his leg problems, but he has alleged enough to proceed past the pleading stage against these defendants.

As to Dr. Mitcheff and Director Ivers, his allegations are quite sparse. He alleges in general terms that they "knew . . . he was receiving constitutionally inadequate medical care, but having failed to intervene on his behalf they were deliberately indifferent to Davis's serious medical needs." However, merely "putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to [the plaintiff] that might be redressed by the law" is not enough to state a claim under federal pleading standards. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th

---

[2] The court is cognizant that some of the events underlying the complaint occurred outside the two-year limitations period applicable to civil rights cases. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). However, a claim does not accrue until the plaintiff knows the fact and the cause of an injury. *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015). It appears that Mr. Davis was not aware of his true diagnosis, and the fact that he had been misdiagnosed by Drs. Talbot and Marandet, until he saw the vascular surgeon in 2020. The complaint is not dated, but it was electronically filed in March 2022, which may be within two years of when the claim accrued. Untimeliness is an affirmative defense, and dismissal at the pleading stage is not permitted unless it is evident from the face of the complaint that the claims are untimely. *See O'Gorman*, 777 F.3d at 889; *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). The court concludes that this standard is not satisfied here, although further factual development may show that one or more of his claims is untimely.

4

Cir. 2010). Furthermore, liability under 42 U.S.C. § 1983 is based on personal responsibility, and these officials cannot be held liable for the actions of other medical staff solely because they hold supervisory positions. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Supervisory staff can be held liable for a constitutional violation if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019.)

Mr. Davis does not mention Director Ivers in the narrative section, and there are no allegations from which the court can plausibly infer that she was subjectively aware that he was being mistreated by prison doctors and facilitated or condoned their conduct. Nor is there a plausible basis to infer that, as a nurse, she had the ability to override the medical decisions of prison doctors. *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1076 (7th Cir. 2012). As to Dr. Mitcheff, the only mention of him in the narrative section is an allegation that he had Mr. Davis placed in the "restraint unit" at Pendleton for unspecified reasons, and the following day Mr. Davis was transferred to the infirmary at MCF. The court cannot plausibly infer from this allegation that Dr. Mitcheff was deliberately indifferent to Mr. Davis's serious medical needs, or that he was even personally involved in his care. Likewise, he sues Dr. Kuenzli, who he identifies as a doctor at MCF, but he does not mention this doctor in the narrative section or include any allegations about what role the doctor played, if any, in making decisions about his medical care. The court cannot plausibly infer that Dr. Kuenzli was

5

deliberately indifferent to Mr. Davis's medical needs. These defendants will be dismissed.

He also sues Wexford, which previously employed medical staff at Indiana prisons. Wexford's contract with Indiana Department of Correction terminated in July 2021 and it was replaced by Centurion Health ("Centurion"). *See Baldwin v. Westville Corr. Facility*, No. 3:21-CV-682-DRL-MGG, 2021 WL 5759136, at *2 (N.D. Ind. Dec. 3, 2021). Wexford could be held liable for constitutional violations during the time it provided medical care at Indiana prisons, which includes Mr. Davis's treatment from 2018-2020. *See Hildreth v. Butler*, 960 F.3d 420, 422 (7th Cir. 2020). However, there is no general *respondeat superior* liability under 42 U.S.C. § 1983, and Wexford cannot be held liable solely because it employed medical staff at MCF. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020). A private company performing a public function can be held sued under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but municipal entities "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of the official policy requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). There is no heightened pleading standard applicable to *Monell* claims, but the "plausibility" standard set forth in *Twombly* and *Iqbal* applies equally to *Monell* claims. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017); *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011).

6

Mr. Davis alleges in general terms that Wexford had a "cost-cutting policy and/or practice of denying all requests for surgical treatment despite the medical need[.]" However, there are no allegations in the complaint suggesting that Mr. Davis requested surgery, or that his doctors were aware he needed surgery. Instead, he claims that the doctors misdiagnosed him as having gout or potentially diabetes. *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (*Monell* requires a plaintiff to show that an official policy "was the 'moving force' behind his constitutional injury"). Nor has he included any allegations about other alleged instances of cost-cutting to suggest that there was an actual custom or policy at play, rather than isolated wrongdoing by the individuals responsible for his care. This corporate defendant will be dismissed.

Finally, although his allegations on this point are rather sparse, the complaint can be read to seek injunctive relief related to his need for rehabilitation services to address the amputation of his legs, and for care related to his kidney failure. MCF Warden William Hyatte has both the authority and the responsibility to ensure that inmates at his facility are provided constitutionally adequate medical treatment as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011); *see also Daniel v. Cook Cty.*, 833 F.3d 728, 737 (7th Cir. 2016) ("[T]he constitutional duty under the Eighth and Fourteenth Amendments to provide adequate health care rests on the custodian."). Therefore, Mr. Davis will be allowed to proceed on an Eighth Amendment claim against the Warden in his official capacity for injunctive relief related to his ongoing need for medical care.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Dr. Paul Talbot and Dr. Noe Marandet in their personal capacity for monetary damages for failing to provide adequate medical care as required by the Eighth Amendment for pain and swelling in his legs, leading to the amputation of his legs in March 2020;

(2) DIRECTS the clerk to add Warden William Hyatte as a defendant;

(3) GRANTS the plaintiff leave to proceed against Warden William Hyatte in his official capacity on an Eighth Amendment claim for injunctive relief to obtain medical care needed to address the amputation of his legs and his kidney problems;

(4) DISMISSES all other claims;

(5) DISMISSES Dr. Carl E. Kuenzli, Dr. Mitchell, Director of Nursing Lee Ivers, and Wexford Health Source as defendants;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden William Hyatte at the Indiana Department of Correction and to send him a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(7) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Paul Talbot and Dr. Noe Marandet at Wexford of Indiana, LLC, and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(8) ORDERS the Indiana Department of Correction and Wexford of Indiana, LLC, to provide the United States Marshal Service with the full name, date of birth, and last

known home address of any defendant who does not waive service, to the extent this information is available; and

(9) ORDERS Warden Hyatte, Dr. Talbot, and Dr. Marandet to respond, as provided in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on April 26, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT